Filed 5/5/21  P. v. Morales CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>VALENTE CAMPOS MORALES,<br><br>    Defendant and Appellant. | F080126<br><br>(Kern Super. Ct. No. BF175579A)<br><br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Kern County.  Stephen D. Schuett, Judge.

Matthew J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Franson, Acting P.J., Meehan, J. and De Santos, J.

## INTRODUCTION

Appellant and defendant Valente Campos Morales was convicted of attempted burglary (Pen. Code, §§ 664/460, subd. (a))[1] and sentenced to three years in prison. On appeal, his appellate counsel has filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) We affirm.

## FACTS

Around 4:00 p.m. on January 29, 2019, Erika Lopez was at Sandra Rodriguez's apartment, and they were taking care of their children. Ms. Lopez was sitting in the living room and caring for her child, when she heard a "fidgety" sound outside the window. The blinds were completely closed over that window.

Ms. Lopez testified she moved aside the blinds and saw defendant standing outside. He was "messing" with the bottom corner of the window screen, and moving it up and down "to where I thought he was trying to get in." Defendant was wearing a red-checkered shirt, had latex gloves on both hands, and was using an object that appeared to be a key chain or can opener to move the screen up and down.

Ms. Lopez testified defendant looked "shocked" when she moved the blinds and looked at him through the window. Ms. Lopez called Ms. Rodriguez, who had not been in the room, and told her that someone was at the window trying to get in.

Ms. Rodriguez immediately opened the front door and saw defendant standing between the door and the window. She confronted defendant and asked what he was looking for. Defendant said he was looking for "George," referring to Ms. Rodriguez's brother. Defendant said he needed to talk to George, and George was the only one that could help him for what he was going through.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

Ms. Rodriguez testified her brother previously told her that he hung out with defendant, but she had never seen them together and did not recognize defendant. Ms. Rodriguez told defendant that George did not live at her apartment, and that "whenever [defendant] sees him, he can talk to him about whatever he need[s] to talk to him, but not to come to my door," and to leave.

Ms. Rodriguez testified defendant walked away from her front door and went to the parking lot of a nearby church. Ms. Rodriguez heard noises, so she went outside and followed him. Defendant was by the church, and he was screaming. Ms. Rodriguez again told defendant that he had to leave, and he finally left the area.

Bakersfield Police Officer Mariya Corral responded to Ms. Rodriguez's apartment. Ms. Rodriguez reported that defendant said he was there to collect money from her brother.

Officer Reagan Selman also responded to the area, and saw defendant running southbound about a block away from Ms. Rodriguez's apartment. Defendant was holding several items in his hands, including a burgundy shirt and stick. Selman drove up to defendant's location and shouted at him to stop and get on the ground. As Selman approached defendant to detain him, defendant threw the items on the ground, consisting of two black latex gloves, a bottle opener, a key chain, a stick that was three or four feet long, and a grey shirt. Selman recovered the burgundy shirt along the route defendant had been running.

Officer Selman testified that while the bottle opener, gloves, and stick were potentially burglary tools within the meaning of section 466, the items also could be used to dig through garbage.[2]

---

[2] Section 466 states in part: "Every person having upon him or her in his or her possession a picklock, crow, keybit, crowbar, screwdriver, vise grip pliers, water-pump pliers, slidehammer, slim jim, tension bar, lock pick gun, tubular lock pick, bump key, floor-safe door puller, master key, ceramic or porcelain spark plug chips or pieces, or other instrument or tool with intent feloniously to break or enter into any building … is

## PROCEDURAL BACKGROUND

On February 8, 2019, a complaint was filed that charged defendant with one count of attempted burglary.

On March 6, 2019, the court declared a doubt as to defendant's competency in response to defense counsel's motion, suspended criminal proceedings pursuant to section 1368, and appointed two experts to examine defendant.

On March 27, 2019, the court reviewed the reports, found defendant was competent to stand trial, and reinstated criminal proceedings.

On March 29, 2019, defendant posted bail and was released from custody. On April 9, 2019, defendant failed to appear, and the court issued a no-bail bench warrant. On April 25, 2019, defendant was returned to court.

On May 7, 2019, defendant rejected a negotiated disposition to plead to the charged offense for one year in custody as a term of felony probation, and that the prosecution would not file a failure to appear charge.

On May 10, 2019, the preliminary hearing was held, and defendant was held to answer.

On May 17, 2019, the information was filed charging defendant with count 1, attempted burglary (§§ 664, 460, subd. (a)).

On July 22, 2019, after a jury trial, defendant was convicted of the charged offense.

On August 18, 2019, the court found defendant was not statutorily eligible for probation absent unusual circumstances. It was separately found that he was not an appropriate candidate for probation because he was on misdemeanor probation when he

guilty of a misdemeanor. Any of the structures mentioned in Section 459 shall be deemed to be a building within the meaning of this section."

committed the instant offense, and he had committed four offenses since 2018, reflecting an escalating pattern of behavior.

The court imposed the upper term of three years, based on aggravating factors that defendant's prior convictions were numerous and increasing in seriousness; he was on probation for four prior convictions at the time; his prior performance on probation was unsatisfactory; the manner of the crime indicating planning because he was wearing latex gloves; there were no mitigating factors. The court imposed a restitution fine of $300 (§ 1202.4, subd. (b)) and suspended the parole revocation fine in the same amount (§ 1202.45), with victim restitution to remain open. The court found defendant did not have the ability to pay the $40 court operations assessments (§ 1465.8) and the $30 criminal conviction assessment (Gov. Code, § 70373) and did not impose those amounts.

On October 15, 2019, defendant filed a timely notice of appeal.

## DISCUSSION

As noted above, defendant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that defendant was advised he could file his own brief with this court. By letter on July 29, 2020, we invited defendant to submit additional briefing. To date, he has not done so.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## DISPOSITION

The judgment is affirmed.